**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Alan Lehr, | No. CV-19-01127-PHX-DWL |
| Petitioner, | ORDER |
| v. | DEATH PENALTY CASE |
| Ryan Thornell, et al., | |
| Respondents. | |

Scott Alan Lehr is an Arizona death row prisoner who has filed an amended habeas petition. (Doc. 32.)  Now pending before the Court is Lehr's motion for a stay of these proceedings so he can return to state court to exhaust certain claims. (Doc. 72.)  The stay request is now fully briefed. (Docs. 79, 80, 81, 89, 93.)  Also pending before the Court are two motions by Lehr requesting authorization for federal counsel to represent him in various state-court proceedings. (Docs. 73, 74.)  Respondents take no position on these requests. (Docs. 73 at 2, Doc. 74 at 2.)

For the reasons set forth below, all of Lehr's motions are denied.

## RELEVANT BACKGROUND

The following summary is compiled from the Arizona Supreme Court's opinions on direct review of Lehr's convictions and sentences.  *State v. Lehr*, 38 P.3d 1172 (Ariz. 2002) ("*Lehr I*"), *supplemented by* 67 P.3d 703 (Ariz. 2003) ("*Lehr II*"); *State v. Lehr*, 254 P.3d 379 (Ariz. 2011) ("*Lehr III*").

"Over the course of about a year, beginning in February 1991, Lehr separately

attacked ten women in central and northwest Phoenix, abducting and sexually assaulting his victims and brutally murdering three of them." *Lehr III*, 254 P.3d at 383.  In 1996, Lehr was convicted of three counts of first-degree murder, three counts of attempted first-degree murder, two counts of aggravated assault, seven counts of kidnapping, thirteen counts of sexual assault, one count of attempted sexual assault, four counts of sexual conduct with a minor, and four counts of sexual assault with a child under the age of fourteen. *Id.* at 383-84.  The trial court sentenced Lehr to death for the murders of victims M.M., M.C., and B.C.  *Id.* at 384.

In *Lehr I*, the Arizona Supreme Court reversed the convictions concerning M.M. and M.C. and remanded for a retrial.  Later, in *Lehr II*, the court also vacated Lehr's death sentence for B.C.'s murder and remanded for resentencing in light of the Supreme Court's intervening decision in *Ring v. Arizona*, 536 U.S. 584 (2002).

The counts involving victims M.M. and M.C. were retried in 2009.  *Lehr III*, 254 P.3d at 384.  After the juries returned guilty verdicts on the two remanded murder counts, the matters were re-consolidated for sentencing.  *Id.*  The jury concluded that Lehr should be sentenced to death for the murders of M.M. and M.C. but could not reach a verdict on the appropriate sentence for the murder of B.C.  *Id.*  In lieu of retrying the sentencing phase for B.C.'s murder, the State withdrew its request for the death penalty and the trial court sentenced Lehr to life imprisonment to be served consecutively to his other sentences.  *Id.*

In *Lehr III*, decided in 2011, the Arizona Supreme Court affirmed Lehr's convictions and sentences.  On February 19, 2019, after unsuccessful post-conviction proceedings in state court, Lehr filed a notice of intent to file a petition for writ of habeas corpus.  (Doc. 1.)  Lehr filed a habeas petition on December 17, 2019 (Doc. 22) and an amended petition on April 15, 2021 (Doc. 32).

## APPLICABLE LAW

I.    *Rhines*

Under "limited circumstances," a district court is authorized to stay a habeas petition to allow the petitioner to present unexhausted claims in state court without losing the right

to federal habeas review pursuant to the relevant one-year statute of limitations.  *Rhines v. Weber*, 544 U.S. 269, 273-77 (2005).  Under *Rhines*, "a district court must stay a mixed petition only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics."  *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

The *Rhines* "good cause" standard does not require "extraordinary circumstances."  *Id.* at 1024 (citing *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005)).  However, courts "must interpret whether a petitioner has 'good cause' for a failure to exhaust in light of the Supreme Court's instruction in *Rhines* that the district court should only stay mixed petitions in 'limited circumstances.'"  *Id.* (citing *Jackson*, 425 F.3d at 661).  Courts must also "be mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court."  *Id.* (citing *Rhines*, 544 U.S. at 276-77).

*Rhines* applies only to mixed petitions—those containing both exhausted and unexhausted claims.  *King v. Ryan*, 564 F.3d 1133, 1139-40 (9th Cir. 2009).  A *Rhines* stay is inappropriate if the claims for which the petitioner seeks a stay are technically exhausted through procedural default.  *See e.g.*, *Armstrong v. Ryan*, 2017 WL 1152820 (D. Ariz. 2017); *White v. Ryan*, 2010 WL 1416054, *12 (D. Ariz. 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

II.   Exhaustion

Federal courts may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is "grounded in principles of comity," as it gives the States "the first opportunity to address and correct alleged violations of state prisoner's federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the

highest state court with jurisdiction to consider it; or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). The latter form of exhaustion is described as "technical exhaustion" through procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007). *See generally Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability. Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.").

Arizona's "preclusion rules require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case." *State v. Anderson*, 547 P.3d 345, 350 (Ariz. 2024). Rule 32 of the Arizona Rules of Criminal Procedure precludes relief for claims that do not fall within the category of claims for which a successive petition for post-conviction relief ("PCR") is permitted. *See* Ariz. R. Crim. P. 32.2(a) & (b). Rule 32 procedurally bars relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. *See* Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). The Ninth Circuit has held that "Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim." *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012).

"Claims for relief based on Rule 32.1(b) through (h) are not subject to preclusion under Rule 32.2(a)(3), but they are subject to preclusion under Rule 32.2(a)(2)." Ariz. R. Crim. P. 32.2(b). "However, when a defendant raises a claim that falls under Rule 32.1(b) through (h) in a successive or untimely post-conviction notice, the defendant must explain the reasons for not raising the claim in a previous notice or petition, or for not raising the claim in a timely manner. If the notice does not provide sufficient reasons why the

1  defendant did not raise the claim in a previous notice or petition, or in a timely manner, the

2  court may summarily dismiss the notice."  *Id.  See also* Ariz. R. Crim. P. 32.11(a) (if "no

3  remaining claim presents a material issue of fact or law that would entitle the defendant to

4  relief . . . the court must summarily dismiss the petition").

5  III.    Procedural Default

6       In *Coleman*, the Supreme Court held that a state prisoner who fails to comply with

7  state-law procedural requirements in presenting his claims is barred by the adequate-and-

8  independent-state-ground doctrine from obtaining a writ of habeas corpus in federal court.

9  *Coleman*, 501 U.S. at 731-32.  *See also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir.

10  2014) ("An unexhausted claim will be procedurally defaulted, if state procedural rules

11  would now bar the petitioner from bringing the claim in state court.").

12       A default may be excused only if "a constitutional violation has probably resulted

13  in the conviction of one who is actually innocent" or if the petitioner demonstrates cause

14  for the default and prejudice resulting from it.  *Murray v. Carrier*, 477 U.S. 478, 496

15  (1986).  To demonstrate cause, the petitioner must establish that "some objective factor

16  external to the defense impeded counsel's efforts to comply with the State's procedural

17  rule." *Id.* at 488.  To establish prejudice, a petitioner "must show not merely a substantial

18  federal claim, such that 'the errors . . . at trial created a *possibility* of prejudice,' but rather

19  that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn*

20  *v. Ramirez*, 596 U.S. 366, 379-80 (2022) (quoting *United States v. Frady*, 456 U.S. 152,

21  170 (1982)).

22       In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that ineffective

23  assistance of PCR counsel may serve as cause to excuse the default of a claim of ineffective

24  assistance of trial counsel.  *Id.* at 17.  *See also Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

25  After the decision in *Martinez*, the Ninth Circuit held that federal habeas courts could hear

26  new evidence to determine whether a defaulted claim of ineffective assistance of trial

27  counsel was substantial.  *Dickens*, 740 F.3d at 1321.

28       Subsequently, however, the Supreme Court held that in adjudicating a *Martinez*

claim, "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the petitioner satisfies the "stringent requirements" of 28 U.S.C. § 2254(e)(2).  *Ramirez*, 596 U.S. at 382.  Section 2254(e)(2) applies only when there has been "a failure to develop the factual basis of a claim" due to "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 383 (quoting *Williams v. Taylor*, 529 U.S. 420, 432 (2000) (*Michael Williams*)).  A petitioner bears "'responsibility' for all attorney errors during [PCR] proceedings," including "counsel's negligent failure to develop the state postconviction record." *Id*. (quoting *Michael Williams*, 529 U.S. at 432).  In such a case, a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2).[1]  *Id.*

## ANALYSIS

I.   <u>*Rhines* Stay</u>

Lehr seeks a *Rhines* stay to allow him to return to the Arizona courts to attempt to present Claims 3(B), 3(E), 3(F), 12, 15(C), 15(D), and 19 of his amended habeas petition. Respondents contend the claims are technically exhausted and procedurally defaulted and otherwise fail to meet the requirements for obtaining a *Rhines* stay.

A.   **Claim 19**

In Claim 19, Lehr alleges that the jury instructions at both his 1996 trial and his 2009 retrial misstated the governing law regarding premeditation and intent, lessening the burden of proof for the prosecution to prove the elements of first-degree murder and denying him due process under the Fourteenth Amendment.  (Doc. 32 at 465-71.)

---

[1]     Under § 2254(e)(2), if the petitioner has "failed to develop the factual basis of a claim in State court proceedings," a district court cannot hold an evidentiary hearing on the claim unless (1) the claim relies on either "a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review" or a "factual predicate that could not have been previously discovered through due diligence" and (2) "the facts underlying the claim would establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty."

1                    1.    <u>Premeditation</u>

2          Lehr contends that the premeditation instruction at his 1996 trial[2] was contrary to

3    *State v. Thompson*, 65 P.3d 420 (Ariz. 2003),[3] and rises to the level of a federal

4    constitutional violation based on *Sandstrom v. Montana*, 442 U.S. 410 (1979), because it

5    relieved the prosecution of proving the element of premeditation beyond a reasonable

6    doubt.  (Doc. 32 at 468-70, 583.)  He concedes he did not challenge the 1996 premeditation

7    instructions in state court.[4]  (Doc. 58 at 469.)  Respondents assert that because Lehr failed

8    to raise this portion of his claim in the Arizona courts, and the state's procedural rules

9    prevent him from returning to state court to attempt to present it for the first time, this

10   portion of Claim 19 is technically exhausted.  (Doc. 80 at 7; Doc. 46 at 375.)

11         Lehr contends that the Arizona Supreme Court's 2003 decision in *Thompson* is a

12   significant change in the law entitling him to seek relief in state court on his challenge to

13   the 1996 premeditation instruction via a successive PCR petition under Rule 32.1(g) of the

14   Arizona Rules of Criminal Procedure.  (Doc. 72 at 5-6.)  In support of this assertion, Lehr

15   cites two unpublished state court cases[5] that purportedly demonstrate that *Thompson* was

16   a significant change in the law for purposes of Rule 32.1(g).  (*Id.*)  Respondents do not

17   contest Lehr's assertion that *Thompson* was a significant change in the law; rather, they

---

19   [2]    The trial court gave the following instruction regarding premeditation at Lehr's
20   1996 trial: "Premeditation means that the defendant's intention or knowledge existed
21   before the killing long enough to permit reflection.  However, the reflection differs from
     the intent or knowledge that conduct will cause death.  It may be as instantaneous as
22   successive thoughts in the mind, and it may be proven by circumstantial evidence."  (RT
     11/20/1996 AM at 16.)

23   [3]    *Thompson* held that the statutory definition of premeditation requires actual
24   reflection and not the mere passage of time.  65 P.3d at 427.

25   [4]    Because Lehr challenged the premeditation jury instructions during his 2009 trial in
     his appeal to the Arizona Supreme Court, this portion of Claim 19 is exhausted.  (*See*
26   Opening Brief 2009, at 61–64; Doc. 32 at 465-66.)

27   [5]    *State v. Tucker*, No. 2 CA-CR 2005-0321-PR, 2006 Ariz. App. Unpub. Lexis 369
28   *6 (Ariz. Ct. App. May 23, 2006); *State v. Sartin*, No. 2 CA-CR 2005-0135-PR, 2006
     Ariz. App. Unpub. Lexis 135 *7, ¶ 8 (Ariz. Ct. App. Mar. 30, 2006).

1   argue that if Lehr attempted to return to state court to raise a *Thompson* claim, the state

2   courts would reject it as procedurally barred.  (Doc. 80 at 8.)

3          The Court agrees with Respondents on this point.  Although claims arising under

4   Rule 32.1(g) are an exception to the rules of preclusion and are exempt from the timeliness

5   requirements of Arizona's postconviction rules, a petitioner must still file those claims

6   "within a reasonable time after discovering the[ir] bas[e]s," Ariz. R. Crim. P. 32.4(b)(3)(B),

7   and must "provide sufficient reasons" why the claim was not timely raised.  Ariz. R. Crim.

8   P. 32.2(b).  Lehr could not raise his premeditation claim based on *Thompson* until after the

9   Arizona Supreme Court issued the opinion in 2003.  Lehr contends his first opportunity to

10  present the claim, under Rule 32.1(g), was during post-conviction review after the Arizona

11  Supreme Court denied his direct appeal in 2011.[6]  Lehr asserts, however, for purposes of

12  explaining why the claim was not timely raised at that time, that it was not "discovered"

13  until his case proceeded to federal court and new counsel was appointed.  He argues the

14  "ineffectiveness of post-conviction counsel informs the timeliness of his claims, because it

15  establishes that Lehr cannot be faulted when the claims were not discovered due to post-

16  conviction counsel's admitted failure to review the jury instructions."  (Doc. 81 at 5-6.)

17         This argument is unavailing.  There is no reason to believe that Lehr's delay would

18  be deemed "reasonable" by the state courts. "Mere inadvertence or neglect" is not

19  "considered a valid reason for allowing a party to avoid the strict time limits of Rule 32."

20  *State v. Pope*, 635 P.2d 846, 849 (Ariz. 1981).  Although *Pope* addressed the time limits

21  for filing a notice of a claim alleging constitutional violations under Rule 32.1(a), Lehr

22  fails to demonstrate that counsel's failure to act diligently in "discovering" the legal basis

23  for his claim for over 20 years would be deemed reasonable under Rule 32.4(b)(3)(B).  This

24  is especially true given that the same legal ground was raised in his direct appeal from his

25

26

27  [6]      Lehr's third direct appeal pertained to only the 2009 retrial involving victims M.M.
    and M.C. and the consolidated resentencing for the counts involving the three murder
28  victims.

2009 conviction.[7]  Additionally, Lehr has no state-law right to the effective assistance of postconviction counsel, which is effectively what he is arguing.  *State v. Escareno-Meraz*, 307 P.3d 1013, 1014 (Ariz. Ct. App. 2013) ("Non-pleading defendants . . . have no constitutional right to counsel in post-conviction proceedings; thus, despite the existence of state rules providing counsel, a claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding."); *State v. Mata*, 916 P.2d 1035, 1052-53 (Ariz. 1996) (rejecting the "infinitely regressive notion" that "the right to effective counsel on appeal is empty without effective counsel to challenge [previous] appellate counsel's performance").

Additionally, even if, as Lehr asserts, his PCR counsel's negligence in failing to research, investigate, or raise any claims related to the 1996 jury instructions establishes that the claim was not "discovered" during the pendency of his PCR proceedings, the claim was included in his initial habeas petition filed in 2019 (*see* Doc. 22 at 381) and he provides no explanation, much less a reasonable one, for failing to raise the claim in state court for over four more years.  Because Lehr fails to provide meritorious reasons for failing to raise this claim in an earlier proceeding, the claim would be subject to summary dismissal by the state courts and therefore this portion of the claim is technically exhausted.  *See* Ariz. R. Crim. P. 32.2(b). *See also State v. Rogers*, 2014 WL 6766695, *1-2 (Ariz. Ct. App. 2014) (claim brought 10 years after *Thompson* subject to summary dismissal due to petitioner's failure to provide meritorious reasons for failing to raise it in an earlier proceeding).

### 2.    Intent

Lehr contends that the instructions on the element of intent during his 1996 and 2009 trials permitted the jury to convict him of first-degree murder "based solely upon a finding that he intended to engage in conduct—without a finding beyond a reasonable

---

[7]    "A defendant must file the notice for a claim under Rule 32.1(b) through (h) within a reasonable time after *discovering* the basis of the claim." Ariz. R. Crim. P. 32.4(b)(3)(B) (emphasis added).

1   doubt that Lehr actually had intent to kill [] any of the victims," in violation of his due

2   process rights under the Fourteenth Amendment. (Doc. 32 at 470-71.)[8] Respondents assert

3   that because Lehr failed to raise this portion of his claim in the Arizona courts and the

4   state's procedural rules prevent him from returning to state court to attempt to present it

5   for the first time, this portion of Claim 19 is technically exhausted. (Doc. 80 at 12.) The

6   Court agrees.

7           Lehr contends the claim is cognizable under Rule 32.1(g). The Arizona Supreme

8   Court has explained the rationale for the Rule 32.1(g) exception:

> A defendant is not expected to anticipate significant future changes of the
> law in his of-right PCR proceeding or direct appeal. Nor should PCR rules
> encourage defendants to raise a litany of claims clearly foreclosed by existing
> law in the faint hope that an appellate court will embrace one of those
> theories. In those rare cases when a "new rule" of law is announced, Rule
> 32.1(g) provides a potential avenue for relief.

13  *State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009). Those principles are inapplicable here

14  because Lehr's challenge to the intent instruction does not rely on a new rule of law. The

15  cases on which Lehr relies in his amended petition (Doc. 32 at 470) and in his *Rhines*

16  motion (Doc. 72 at 7-9)—*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994),

17  *Sandstrom*, *State v. Slemmer*, 823 P.2d 41 (Ariz. 1991), and *State v. Rendon*, 776 P.2d 353

18  (Ariz. 1989)—all were decided before his 1996 and 2009 trials. Because there has been

19  "no significant change in the law" since Lehr's trials, Rule 32.1(g) is inapplicable to this

20  portion of Claim 19.

21          Lehr contends that the Arizona courts' future application of *Sandstrom* to strike

22  down the 1996 and 2009 intent instructions in his case would be a transformative event,

23  creating a "significant change in the law" in Arizona that would allow him to secure post-

24  conviction relief under Ariz. R. Crim. P. 32.1(g):

25  ───────────────

26  [8]      The trial court gave the following instruction regarding intent at Lehr's 1996 trial:
    "The term intentionally or with intent to, as used in these instructions, means that a
27  defendant's objective is to cause that result or engage in that conduct." (RT 11/20/96 at
    13.) The trial court provided an identical instruction at Lehr's 2009 trial. (RT 03/24/09 at
28  37.)

1
2
3
4

> Where, as Lehr maintains, the Arizona courts would strike down those instructions on due process grounds, Lehr will have established a significant change in Arizona law allowing him relief.  Because Rule 32.1(g) provides Lehr a remedy for his challenges to the intent instructions, this Court should stay and abate proceedings as Lehr pursues this available state court remedy, which will preclude any finding of procedural default.

(Doc. 58 at 472-73.)   This circular reasoning is unpersuasive and unsupported by any binding legal authority.[9]  At any rate, Lehr provides no explanation for why he did not raise any challenge to the intent instruction in a previous petition or in a timely manner.  As explained above, the Court rejects Lehr's repeated assertion that the claims are not untimely because "they are being raised within a reasonable time after federally-appointed counsel discovered them."  (Doc. 81 at 5.)  Because Lehr fails to provide meritorious reasons for failing to raise this claim in an earlier proceeding, the claim would be subject to summary dismissal by the state courts and therefore this portion of the claim is technically exhausted.  *See* Ariz. R. Crim. P. 32.2(b).

> …

> …

---

[9]    Lehr cites *Van Tran v. State*, 66 S.W.3d 790 (Tenn. 2001), in support of this assertion.  (Doc. 81 at 4 n.2.)  But that Tennessee decision sheds little light on the appropriate application of Arizona's procedural rules in this case.  For example, as the court explained in reopening Van Tran's case for consideration of a novel constitutional issue, Tennessee courts recognize that "the importance of correctly resolving constitutional issues suggests that constitutional issues should rarely be foreclosed by procedural technicalities."  *Van Tran*, 66 S.W.3d at 799.  But in Arizona, "[t]here is a strong policy against piecemeal litigation."  *Smith*, 46 P.3d at 1071.  The requirement that constitutional issues be raised promptly under Rule 32.2(a) is designed to prevent "endless or nearly endless reviews of the same case in the same trial court," *Shrum*, 203 P.3d at 1178, and "not only serves important issues of finality . . . but also allows any relief to be issued at a time when the interests of justice, from the perspectives of the defendant, the State, and the victim, can best be served.  If a new trial or further proceedings are required, these can take place promptly, before the defendant has suffered undue prejudice and evidence becomes stale."  *Id.*  The Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim.  *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   **Claims 3(B), 3(E), 3(F), 12, 15(C), and 15(D)**

Lehr also seeks a *Rhines* stay to return to state court to present several ineffective assistance of counsel ("IAC") claims.  (Doc. 72 at 11-17.)[10]

More specifically, in Claims 3(B), 3(E), and 3(F), Lehr alleges that counsel provided ineffective assistance during the guilt phase by failing to investigate and consult with eyewitness and fingerprint and forensic experts.  (Doc. 32 at 87-139, 174-90.)  Lehr concedes these claims were not raised in state court.  (*Id.* at 87 [Claim 3(B)]; *id.* at 174 [Claim 3(E)]; *id.* at 185 [Claim 3(F)].)

Next, in Claim 12, Lehr alleges that counsel provided ineffective assistance during the penalty phase by failing to investigate and present mitigating evidence of his social history.  (*Id.* at 301-11.)[11]  In his reply in support of his amended habeas petition, Lehr does not contend that he specifically raised this claim in state court but also contends that he wasn't required to do so.  (Doc. 58 at 340.)  Nevertheless, in his *Rhines* motion, Lehr seems to characterize Claim 12 as a "potentially meritorious, but unexhausted, ineffectiveness claim[]."  (Doc. 72 at 17.)

Finally, in Claim 15(C), Lehr alleges that counsel performed ineffectively "by stipulating to the removal of jurors with anti-death penalty views without trying to rehabilitate them."  (Doc. 32 at 430-35.)  In a related vein, in Claim 15(D), Lehr alleges that counsel performed ineffectively by "fail[ing] to adequately question the jurors during voir dire, and fail[ing] to use the Colorado Method of capital voir dire in particular."  (*Id.* at 435-38.)  As for Claim 15(C), Lehr argues in his reply in support of his amended habeas

---

[10]   The Court denies any stay request on grounds other than those fully argued in Lehr's motion.

[11]   Claim 12 is composed of a variety of challenges to counsel's performance during the penalty phase.  (Doc. 32 at 269-381)  Although the *Rhines* motion states that Lehr is seeking a stay as to "Claim 12 (failure to investigate and present mitigating evidence of Lehr's social history)" (Doc. 72 at 12), it may be more accurate to say that he is seeking a stay as to Claim 12(C), which is the portion of Claim 12 alleging that "[t]rial counsel unreasonably failed to investigate, prepare, and present evidence of Lehr's character and background, and develop a comprehensive social history."  (Doc. 32 at 301.)

petition that the arguments he raised during his PCR proceedings were "sufficient to exhaust [this claim] for federal habeas review." (Doc. 58 at 438.) Nevertheless, in his *Rhines* motion, Lehr seems to characterize Claim 15(C) as a "potentially meritorious, but unexhausted, ineffectiveness claim[]." (Doc. 72 at 17.) As for Claim 15(D), Lehr argues in his reply in support of his amended habeas petition that he expressly raised the "Colorado Method" issue in his PCR petition, only for the state courts to improperly fail to rule on it. (Doc. 58 at 420-21 & n.68.) In contrast, Lehr does not argue that he raised a different component of Claim 15(D)—his challenge to counsel's failure to strike Juror 29—in state court. (*Id.* at 444 n.73.) Nevertheless, in his *Rhines* motion, Lehr seems to characterize the entirety of Claim 15(D) as a "potentially meritorious, but unexhausted, ineffectiveness claim[]." (Doc. 72 at 17.)

As an initial matter, Lehr's inconsistency as to whether he exhausted the claims that are the subject of his *Rhines* motion has the potential to complicate the analysis here. The point of *Rhines* is to allow a habeas petitioner to return to state court to present unexhausted claims. Thus, it would be inappropriate to grant a *Rhines* stay to enable a habeas petitioner to return to state court to relitigate claims that were already exhausted. *See, e.g., Onwuka v. Andre*, 2023 WL 2558550, *5 (C.D. Cal. 2023) ("Petitioner is not entitled to a *Rhines* or *Kelly* stay. First, Petitioner has already exhausted his prosecutorial misconduct claim based on allegedly 'false and unreliable trial testimony' by presenting it in his habeas corpus petition to the California Supreme Court . . . . Petitioners are not required to exhaust their claims repeatedly before proceeding to federal court, and there is simply no need to stay the proceedings and allow Petitioner to exhaust a claim that he has already exhausted.") (cleaned up). Nevertheless, to streamline the analysis, the Court will simply assume for purposes of the *Rhines* analysis that Lehr did not previously present, in state court, all of the IAC claims he wishes to return to state court to litigate (*i.e.*, Claims 3(B), 3(E), 3(F), 15(C), and 15(D) and the portion of Claim 12 addressing his social history).

Lehr is not entitled to a *Rhines* stay with respect to these claims because if he were to return to state court to attempt to exhaust them, they would be found precluded under

Rule 32.2(a) given Arizona's rule that IAC claims do not fall within any exceptions to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(b)-(h). *See also Stewart v. Smith*, 46 P.3d 1067, 1071 (Ariz. 2002) ("The ground of ineffective assistance of counsel cannot be raised repeatedly."); *State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002) ("Our basic rule is that where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded."). Additionally, if different IAC allegations are raised in a successive petition, the claims in the later petition will be precluded without a review of the constitutional magnitude of the claims. *Smith*, 46 P.3d at 1071. Lehr raised other IAC allegations in his first PCR petition; therefore, successive claims of IAC are necessarily precluded.

Lehr asserts that a stay is warranted where his IAC claims rely on newly developed evidence. (Doc. 72 at 12-13.) In support, Lehr cites *Pandeli v. Shinn*, 2022 WL 16855196 (D. Ariz. 2022), and the Supreme Court's decision in *Ramirez*.

In *Pandeli*, the court granted a motion for a stay and abeyance to allow a habeas petitioner to return to state court to attempt to exhaust an IAC claim. *Pandeli* is inapposite, however, because there the Respondents conceded that the habeas petition was mixed.[12] Here, Respondents contend that Lehr's petition is not mixed because Lehr's IAC claims are technically exhausted. (Doc. 80 at 14.)[13]

---

[12]    In his supplement, Lehr also cites the Ninth Circuit's order in *Clabourne v. Thornell*, No. 23-99000, Doc. 22 (9th Cir. Nov. 15, 2023), granting an unopposed motion for stay and abeyance, in support of his argument that "the Ninth Circuit agrees that the Arizona courts may apply *Diaz* to allow ineffectiveness claims (like Clabourne's and Lehr's) to be exhausted in a successive state post-conviction petition where post-conviction counsel failed to pursue meritorious claims." (Doc. 79 at 4-5.) This argument is unavailing—*Clabourne* is neither controlling nor persuasive authority because the stay request was unopposed, and as explained below, *Diaz* does not support Lehr's argument that he can pursue successive PCR petitions raising IAC claims based on the ineffectiveness of his PCR counsel.

[13]    Also, even if the facts of *Pandeli* were the same, district judges are not compelled to follow the decisions of other district judges. *Starbuck v. City and County of San*

Lehr's reliance on *Ramirez* fares no better.  "*Ramirez* did not concern a *Rhines* stay and does not bear on the issue here."  *Shanklin v. Raybon*, 2023 WL 2356037, *4 (N.D. Ala. 2023). *See also Ellison v. Thornell*, 2023 WL 4847599, *6 (D. Ariz. 2023) ("*Ramirez* had no effect on state post-conviction proceedings or preclusion rules, nor did it render any of Ellison's claims unexhausted rather than technically exhausted."); *Shockley v. Crews*, 2023 WL 8433163, *4 (E.D. Mo. 2023) ("[T]he change in law wrought by [*Ramirez*] did nothing to change whether Shockley's claims were exhausted."). Consistent with these rulings, after Pandeli was granted a stay in federal court, the PCR court dismissed his successive PCR petition, noting that *Ramirez* had no effect on Arizona's procedural rules. *State v. Pandeli*, CR 1993–008116, Order Dismissing Rule 32 Proceeding (Mar. Cty. Sup. Ct., Feb. 5, 2024) (Doc. 80, Ex. A).  *Ramirez* addressed only the unrelated issue of "whether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record."  596 U.S. at 371.

 Lehr also contends that *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), and Rule 32.6(c) support his contention that he can obtain relief in state court on a second PCR petition raising IAC claims not raised by ineffective PCR counsel.  (Doc. 81 at 8-10.)  As explained below, the Court disagrees.

In *Diaz*, the Arizona Supreme Court determined that a defendant whose counsel had failed to file a petition in two previous Rule 32 proceedings was entitled to raise an IAC claim in a third proceeding.  340 P.3d at 1071.  The court declined to find Diaz's IAC claim waived pursuant to Rule 32.2(a)(3) because Diaz timely filed a notice of PCR seeking to assert an IAC claim and he was blameless regarding his former attorneys' failures to file an initial PCR petition.  *Id.*  Critically, the court explained that its holding would not frustrate Rule 32's preclusion provisions because "[p]ermitting Diaz to file his first petition to assert an IAC claim under the circumstances here will not result in repeated review of

*Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir. 1977); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

- 15 -

the IAC claim; it would result in its first review.  Once the petition is adjudicated, and assuming that Diaz does not obtain relief, this and all other claims that Diaz might have brought will be precluded and Diaz will not be able to raise them in a successive petition." *Id.*  Here, in contrast, Lehr has already obtained adjudication of at least one Rule 32 petition.  Thus, *Diaz* does not assist him—to the contrary, it confirms that IAC claims brought in a subsequent petition will be deemed precluded.

Nor does Rule 32.6(c) support Lehr's position.  Rule 32.6(c) provides: "If [PCR] counsel determines there are no colorable claims, counsel must file a notice advising the court of this determination, and promptly provide a copy of the notice to the defendant." The Rule further delineates 18 specific items that must be provided in the notice.  *Id.* Lehr contends that the commentary to Rule 32.6 establishes that the purpose of the rule is to "ensure that substantial justice is done" and that the rule "establishes that 'substantial justice' is not done when PCR counsel does not raise IAC claims that are substantial or meritorious." (Doc. 72 at 15.)  However, there is no legal authority, or anything in the rule itself, that suggests Rule 32.6(c) was intended to modify or provide an exception to preclusion under *Smith*.  The Arizona Supreme Court recently restated Arizona's rules of preclusion as applied to IAC claims, specifically rejecting an exception to Arizona's preclusionary rules based on the ineffective assistance of PCR counsel:

> The ground of ineffective assistance of counsel cannot be raised repeatedly. Generally, where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.  This Court has rejected an approach to Rule 32 proceedings that would create a never-ending tunnel in which defendants could endlessly litigate effectiveness of counsel by claiming that their latest version was not presented on earlier petitions due to counsel's inadequate representation.

*Anderson*, 547 P.3d at 350-51 (cleaned up).

Nor does *Anderson*, as Lehr suggests in one of his supplemental notices of authority (Doc. 89 at 3-5), entitle him to file a successive PCR petition raising IAC claims.  In *Anderson*, the court considered the "extremely rare set of circumstances in the context of

the pervasive confusion [in Arizona] about parole and the extraordinary remedies [the court] and the legislature fashioned to deal with it." 547 P.3d at 348, 351-52.  In excusing the untimeliness of the IAC claim, the court determined that the delay in filing was not due to Anderson's "mere failure to recognize a valid claim might exist," but rather was attributable to the "pervasive confusion about parole availability at the time of his sentencing." *Id.* at 350.  Additionally, the court found that Anderson's IAC claim was not precluded in view of the court's "duty to 'construe [rules of criminal procedure] to secure . . . fairness in administration . . . and to protect the fundamental rights of the individual while preserving the public welfare.'" *Id.* at 351 (quoting Ariz. R. Crim. P. 1.2).  The court explained that "Rule 32 is 'designed to accommodate the unusual situation where justice ran its course and yet went awry.'" *Id.* (quoting *State v. Carriger*, 692 P.2d 991, 995 (Ariz. 1984)).  The court determined it was appropriate to exercise this equitable exception in *Anderson*, because at the time Anderson filed his previous PCR petitions, his claim would not have been "cognizable" as a "known" claim:

> This case presents unusual . . . circumstances.  Anderson filed previous petitions for PCR in 2000 and 2003.  At that time, defendants, attorneys, and courts did not know of or recognize the error due to the confusion regarding the abolition of parole.  Counsel's error here was less an issue of individual IAC as it was a systemic failure to recognize the effect of the change in the law regarding parole.  As a result of those unusual circumstances, Anderson's 2022 notice of IAC claim was the first time he could have reasonably raised the issue of erroneous advice about the availability of parole.  Indeed, as amicus MCAO concedes, "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice IAC claim where the late discovery of the claim's basis would have been excused."  For the same reasons Anderson's claim is not untimely, it was not cognizable as a "known" claim.

*Id.*  Thus, the issue did not, as Lehr claims, turn on whether Anderson "knew" about the claim, but rather on whether the claim could have been known at the time Anderson filed his first and second PCR petitions.  Due to the systemic confusion regarding the underlying legal claim, *Anderson* determined the claim would not have been cognizable in 2000 or 2003.  Additionally, the court explained, any research conducted by his attorney at the time

1     would have been tainted as a result of the confusion.  *Id.* at 353 n.1.

2         Unlike the petitioner in *Anderson*, Lehr has not demonstrated that this is the first

3  time he could have reasonably raised the IAC claims at issue here or that they would have

4  been uncognizable in his first PCR petition.  Nor does he allege a claim related to parole

5  ineligibility, the issue that established the unique circumstances in *Anderson*.  In fact, Lehr

6  suggests, by asserting PCR counsel's ineffectiveness for failing to raise his IAC claims,

7  that they were cognizable in 2014, when he filed his first PCR petition.

8         Lehr also cites two recent orders allowing capital habeas petitioners to stay their

9  federal proceedings pursuant to *Cruz v. Arizona*, 598 U.S. 17 (2023), to allow litigation of

10  a successive PCR proceeding in the Arizona courts.  *Andriano v. Shinn*, No. 21-99000 (9th

11  Cir. Apr. 29, 2024) (Doc. 89-1, Ex. 1)); *Garcia v. Shinn*, No. 22-99007 (9th Cir. Apr. 29,

12  2024) (Doc. 89-2, Ex. 2).  But Lehr fails to explain why he, like Andriano and Garcia,

13  would be entitled to a stay pursuant to *Cruz*, which held that the Arizona Supreme Court's

14  holding that *Lynch v. Arizona*, 578 U.S. 613 (2016) (per curiam), was not a significant

15  change in the law for purposes of Rule 32.1(g) failed to qualify as an adequate and

16  independent state-law ground for the judgment.  The Ninth Circuit's orders granting

17  Andriano's and Garcia's motions to stay are irrelevant to this Court's decision because

18  *Cruz*, which formed the grounds for granting those orders, simply has no application to

19  Lehr's motion for a stay.

20         Finally, the Court rejects Lehr's argument that he can avoid the preclusive effects

21  of Rule 32.2 by exhausting the newly discovered evidence supporting his IAC claims in

22  state court pursuant to Rule 32.1(e).  A claim alleging ineffective assistance of counsel is

23  a constitutional claim properly raised under Rule 32.1(a).  Lehr supports his IAC claims

24  with new evidence, and such evidence could potentially support a newly discovered

25  evidence claim under Rule 32.1(e).  However, bringing a claim under Rule 32.1(e) would

26  not allow Lehr to fully exhaust his unexhausted IAC claims.  Relief is available under Rule

27  32.1(e) if "[n]ewly discovered material facts probably exist and such facts probably would

28  have changed the verdict or sentence."  This inquiry is similar to the test for prejudice under

*Strickland v. Washington*, 466 U.S. 668 (1984).  However, Rule 32.1(e) does not afford a mechanism for applying the deficient-performance prong of *Strickland*.  Accordingly, if the Court stayed Lehr's petition and allowed him to return to state court to raise a newly discovered evidence claim under Rule 32.1(e), this would not allow him to fully exhaust his IAC claims.

C.   **Conclusion**

Because all claims addressed in Lehr's *Rhines* motion are technically exhausted, Lehr's amended petition is not mixed and *Rhines* is inapplicable.  Lehr is thus not entitled to a stay.

II.   <u>Appointment of Counsel</u>

Lehr asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court to pursue (1) postconviction proceedings and (2) DNA testing. (Docs. 73, 74.)  Respondents take no position on either motion.

The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures."  18 U.S.C. § 3599(e).  The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation."  *Id.* at 194.  The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties."  *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client.  Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment."  *Id.* at 188.

*Harbison* addressed the concern that federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process."  *Id.*  The Court explained that § 3599(e) does not apply to those proceedings

- 19 -

because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial proceedings."  *Id.* at 189.  *See Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014) (explaining that "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief . . . .").  However, *Harbison* also noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation."  556 U.S. at 190 n.7.

Here, the Court has determined that Lehr is not entitled to a *Rhines* stay.  Based on that determination, together with *Harbison*'s discussion of the parameters of § 3599(e), the Court concludes it is not necessary or appropriate to authorize the FPD to represent Lehr in future state court postconviction proceedings.

This leaves Lehr's request to authorize his federally appointed counsel to represent him in "DNA and DNA-related proceedings before the Arizona courts pursuant to Ariz. R. Crim. P. 32.17(A) and Ariz. Rev. Stats. § 13-4240(a)."  (Doc. 74 at 1.)  Even assuming such a request could theoretically be granted under § 3599,[14] the Court declines in its

---

[14]     *But see Gary v. Georgia Diagnostic Prison*, 686 F.3d 1261, 1274-75 (11th Cir. 2012) ("Gary [argues] for a broader reading of § 3599 and *Harbison*.  His position is that the filing of the DNA motion is a 'subsequent stage of a judicial proceeding' and 'post-conviction process.'  It follows, he says, that because § 3599 requires that counsel be afforded for 'every' subsequent stage of available judicial proceedings and for 'all' available post-conviction process, he has a right to federally funded counsel and expert assistance for this motion.  We decline to adopt such a broad interpretation and conclude, instead, that § 3599 does not provide for federally-funded counsel to assist someone standing in Gary's shoes in pursuing a DNA motion, the results of which might serve as the basis for an extraordinary motion for a new trial.  As the language of § 3599(e) and [*Harbison*] indicate, federally-funded counsel is available only for certain subsequent proceedings.  A state court motion for DNA testing does not ordinarily follow the commencement of a federal habeas action and is, therefore, not a subsequent proceeding contemplated by § 3599(e) . . . .  The District Court, therefore, properly denied Gary's motion for funds to pay for an expert to assist counsel in pursuing DNA testing."); *Crutsinger v. Davis*, 2017 WL 2418635, *4 (N.D. Tex. 2017) ("[T]he DNA testing Crutsinger intends to pursue is not a 'subsequent' stage of judicial proceedings in the

discretion to grant the request here.   Under Arizona law, Lehr has a right to seek appointment of counsel in state court to pursue postconviction DNA testing.  *See* Ariz. R. Crim. P. 32.17(c).   Accordingly, there is no need to use federal funds to pay federally appointed counsel to represent Lehr in the future state-court DNA proceedings.  *See, e.g., Taylor v. Simpson*, 2007 WL 141052, *10 (E.D. Ky. 2007) ("Because [the habeas petitioner] has available to him a mechanism under state law. . . through which he can seek post-conviction DNA testing, authorization of funds under [§ 3599] is not reasonably necessary at this time.").  *See also Gary v. Humphrey*, 2011 WL 13302101, *1 (M.D. Ga. 2011) (denying request for federal funding to allow federally appointed habeas counsel to pursue DNA testing in state-court proceedings and noting that a contrary approach would result in the "difficulty" of "the federal government funding extensive legal proceedings that are exclusively within the jurisdiction of the state court and presently beyond this Court's control").

Finally, the Court acknowledges that another district judge appointed federal counsel under § 3599 for purposes of pursing DNA testing in state court.  *Kiles v. Thornell*, 2023 WL 6520352 (D. Ariz. 2023).   However, *Kiles* is factually dissimilar to this case. There, while the habeas petition was pending, Respondents were alerted to a person claiming to be one of the petitioner's missing murder victims whose body had never been found.   *Id.* at *1.   The results of the DNA testing the state conducted provided a straightforward, negative answer to the very narrow question of whether the person who came forward to report her suspicions was in fact the missing victim.   *Id.*   Although Respondents disclosed the negative results, they allegedly failed to disclose the underlying data and laboratory notes supporting the result.   *Id.*   Kiles's federal counsel thus sought authorization to represent Kiles in state-court proceedings to pursue discovery of the

---

ordinary sequential course of death-penalty litigation.  Whether and when post-conviction DNA testing is carried out depends on the facts of a given case and the timing of advances in DNA science.  There is no properly understood time during the life of the case [sic] do it.   The DNA testing is therefore not included in § 3599's description of judicial proceedings 'subsequent' to federal counsel's appointment.").

1    reports under Arizona's postconviction DNA testing statute. *Id.* The court granted this

2    request.

3        Here, in contrast, Lehr seeks to pursue DNA testing of (1) several items of evidence

4    from the crime scene where victim B.C.'s remains were found (even though "the Phoenix

5    Crime Lab initially determined no blood was detected on some of these items"), (2)

6    clothing and other items of evidence collected from all of the sexual assault offenses, and

7    (3) the sexual assault kits from the non-capital cases. (Doc. 74 at 4-9.) Unlike in *Kiles*, no

8    new witnesses have emerged who claim to be missing victims—instead, Lehr simply

9    identifies a variety of reasons why he is hopeful that using advanced techniques to test

10    these items may help exonerate him. The extensive nature of the requested testing

11    underscores why § 3599 is not the appropriate mechanism for pursing state-court DNA

12    testing here.[15]

13        …

14        …

15        …

16        …

17        …

18        …

19        …

20        …

21        …

22        …

23        …

---

[15] Lehr also asserts that "exonerating DNA test results would establish actual innocence and entitlement to habeas review and relief on claims in federal court." (Doc. 74 at 12.) Separately, Lehr has requested discovery in the form of DNA testing concerning his actual innocence claim, which, he contends, would enable him to overcome the default of any claims related to the B.C. homicide. (Doc. 85 at 1, 3-7.) That request, which is governed by different standards than the request here, has not yet been fully briefed and is not before the court in this Order.

1    Accordingly,

2    **IT IS ORDERED** that:

3        1.      Lehr's Motion for Stay and Abeyance under *Rhines* (Doc. 72) is **denied**.

4        2.      Lehr's Motion to Authorize Federally Appointed Counsel to Represent

5    Petitioner in State Post-Conviction Proceedings (Doc. 73) is **denied**.

6        3.      Lehr's Motion to Authorize Federally Appointed Counsel to Represent

7    Petitioner in State Court DNA and Related Proceedings (Doc. 74) is **denied**.

8        Dated this 1st day of July, 2024.

Dominic W. Lanza
United States District Judge